**In re MERIDITH MILLARD PARTNERS, a Colorado general partnership, and Meridith Millard Partners, a Nebraska general partnership, Debtors.**

**H. Christopher CLARK, Trustee of the Bankruptcy Estates of Meridith Hoffman Partners and Meridith Millard Partners, Plaintiff/Appellee/Cross–Appellant,**

**v.**

**BALCOR REAL ESTATE FINANCE, INC., an Illinois corporation, Defendant/Appellant/Cross–Appellee.**

Civ. A. No. 92–K–1003.
Bankruptcy Nos. 89 B 06180 C,
89 B 06181 E.

United States District Court,
D. Colorado.

Sept. 30, 1992.

Bonnie A. Bell, Katch, Wasserman & Jobin, Denver, Colo., for Christopher Clark.

Raymond E. Stachnik, Francis X. Grossi, Jr., Katten, Muchin & Zavis, Chicago, Ill., Tom H. Connolly, Mary R. Scherschel, Gibson, Dunn & Crutcher, Denver, Colo., for Balcor.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This case is before me on cross-appeals from a decision of the bankruptcy court. In its ruling below, the bankruptcy court concluded that the trustee could properly avoid certain preferential transfers (totalling nearly $400,000) the debtors, Meridith Hoffman Partners ("Hoffman") and Meridith Millard Partners (Millard") (collectively "the partners"), made in the one-year period before they filed for bankruptcy protection and reorganization under chapter 11. The partners paid the sums to Balcor Real Estate Finance Inc., ("Balcor") an Illinois corporation which made loans totalling 8 million to the partners in 1985 and 1986.

Balcor argues in this appeal that the bankruptcy court wrongly concluded 1) that the partners were insolvent during the one-year preference period; 2)· that the transfers benefitted certain insider-guarantors of the notes in question; 3) that it would have received less under a chapter 7 petition; and 4) that the transfers were the result of an unusual debt collection practice not made in the ordinary course of business. For the reasons discussed below, I affirm the bankruptcy court's judgment.

The trustee argues, in the cross-appeal, that the bankruptcy court wrongly concluded that Balcor was not a controlling insider under 11 U.S.C. § 547(b)(5). He asserts that the bankruptcy court should have found § 547(b)(5) an alternate basis under which to extend the preference period from 90 days to 1 year. I disagree, and accordingly affirm that portion of the bankruptcy court judgment as well.

## I. Facts and Procedural History

Millard and Hoffman are, respectively, Nebraska and Colorado general partnerships organized in 1985 to develop shopping centers in the two states. Millard's partners included Meridith Plaza, Inc., Lawrence E. Fiedler and Greg Rice. Hoffman's partners included Mer–Hof, Inc., Fiedler and Rice. In September, 1986, Millard executed two promissory notes totalling 5.3 million dollars in favor of Balcor secured by a first deed of trust and an assignment of rents which were later recorded in the appropriate county in Nebraska. Fiedler and the Meridith Organization guaranteed the promissory notes. Hoffman financed 3.5 million of the purchase price with a Balcor loan and note dated January 30, 1985, secured by a second deed of trust and an assignment of rents. Again, Fiedler and Meridith Organization both executed guaranties of the underlying note.

Hoffman executed an escrow agreement with Balcor and Jesse Lipschuetz, Esq., on October 3, 1986. Millard entered a similar escrow agreement on December 1, 1987. Both partners were delinquent and in default under the terms of the promissory notes when they entered into the escrow agreements. Under the terms of the escrow agreements, rents from the two properties were deposited to Lipschuetz's account. The respective property managers would regularly submit disbursement requests to Balcor and Lipschuetz which Balcor would review, comment on, reject or approve. The partners and the property manager retained primary control over day-to-day management and personnel decisions, while Balcor primarily exercised fis-

cal monitoring and supervising. Balcor approved nearly all submitted disbursement requests, except for a few involving the partners or insiders.

Involuntary petitions under chapter 11 were filed against the partners on May 8, 1989. The cases were converted to chapter 7 proceedings in August, 1990. The trustee filed a complaint to recover preferential transfers on April 26, 1991. In a joint pretrial statement filed on February 21, 1992, the parties stipulated, among other things, that the partners were insolvent at the time of the transfers and during all time periods relevant to the adversary proceeding. On March 13, 1992, after reviewing some of the trustees proposed exhibits (uncertified financial statements of the partners), Balcor notified the trustee that it would no longer be bound by its stipulation of insolvency. When it reviewed the exhibits, assertedly for the first time after February 21, 1992, it determined that the uncertified financial statements of the partners "did not establish the insolvency or solvency of either" of the partners. Appellant's opening Brief at 18. It claims that the financial statements were incomplete because they failed to take into account Hoffman and Millard's general partners' net worth. It offered, however, no evidence to suggest that the bankruptcy court would not have found the partners insolvent if it had considered those general partners net worth. The bankruptcy court held a hearing on the complaint on March 18, 1992. As a pretrial matter, it refused to release Balcor from its joint pre-trial stipulation of insolvency. The bankruptcy court entered a written order on April 30, 1992 sustaining the complaint and ordering Balcor to return the funds it received in the year before the petitions were filed. These appeals followed.

## II. Discussion

11 U.S.C. § 547(b)[1] broadly authorizes trustees to avoid transfers of a debtor's interest in property "if five conditions are satisfied and unless one of seven exceptions defined in subsection (c) is applicable."[2] Union Bank v. Wolas, —— U.S. ——, ——, 112 S.Ct. 527, 529, 116 L.Ed.2d 514 (1991). Balcor's appeal is only concerned with three of the five conditions and one of the exceptions. Balcor argues that no insiders received any benefit from the transfers [§ 547(b)(1) and (b)(4)(B)], that the partners were not insolvent at the time of the transfers [§ 547(b)(3)], and that it would not have received any lesser amount under a chapter 7 case [§ 547(b)(5)]. Finally, it argues that the transfers were made strictly in the ordinary course of business between itself and the partners [§ 547(c)(2)].

### A. Forbearance as Non-Pecuniary Benefit

The bankruptcy court concluded that the preference period was properly extended pursuant to § 547(b)(4) to one year by virtue of a benefit to two insiders,

---

1. Except as provided in subsection (c), the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if—
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

2. The trustee may not avoid under this section a transfer—

    (2) to the extent such transfer was—
      (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; and
      (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
      (C) made according to ordinary business terms.
11 U.S.C. § 547(c)(2).

Fiedler and Meridith Organization. Each had signed as guarantors on the notes. The bankruptcy court found, on the strength of *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio)*, 874 F.2d 1186 (7th Cir.1989), and *Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling Inc.)*, 892 F.2d 850 (10th Cir.1989), that the insider-guarantors had benefitted from the partners' payments to Balcor. It found benefit in Balcor's forbearance and willingness not to foreclose on the property or bring suit on the guarantees until after entry of the orders from relief for stay.

Balcor claims there was no factual support for the bankruptcy court's opinion because there was no evidence of forbearance. Since I review this claim on the clearly erroneous standard, I disagree. In the first place, it is not disputed that Balcor did not move to foreclose or otherwise protect its interests while the partners were making payments under the escrow agreements. This is true, despite the fact that the partners were insolvent and delinquent on their payments when they signed the escrow agreements. Furthermore, the bankruptcy court understood exhibits DDDD, EEEE, and FFFF to show that the guarantors were concerned about the release of their guaranties in the year immediately proceeding the bankruptcy filing. The bankruptcy court's finding of benefit to insider-guarantors by forbearance is thus not clearly erroneous.

Balcor also claims that *Robinson Bros.* and *Deprizio* do not apply where there is no pecuniary benefit to the insider-guarantors. In *Deprizio,* the seventh circuit held that the trustee could recover a transfer from an initial transferee where the transfer is a preference only as to an insider of the debtor and not as to the initial transferee. Only two other circuits have adopted a similar position. *Ray v. City Bank & Trust Co. (In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990)); *Manufacturers Hanover Leasing v. Lowrey (In re Robinson Bros. Drilling, Inc.)*, 892 F.2d 850 (10th Cir.1989).

Most courts have held that a trustee may not recover from a non-insider creditor under these circumstances. See, *e.g., In re Performance Communications, Inc.,* 126 B.R. 473, 475 n. 3 (W.D.Penn.1991). Indeed, I find few boisterous boosters of the *Deprizio* approach. See, *In re Performance Communications*, 126 B.R. at 476 (describing the *Deprizio* analysis as analytically unmeaningful and fatally flawed in several respects); *In re Arundel Housing Components, Inc.,* 126 B.R. 216, 219 (Bankr.D.Md.1991) ("It represents an incorrect interpretation of the law whose application would subvert justice, produce much needless mischief and create an unfortunate result in this case."); and Godshall, Pettigrew, Musselman & Brooke, *Two Years Later: Eight Questions Left Unanswered (or Extremely Confused) by Deprizio,* 19 Cal.Bankr.J. 41, 61 (1991) (suggesting that the benefit is technical, not practical, only a matter of timing, not true benefit, and not the type of benefit envisioned by the Code.). As much as I agree that *Deprizio* and *Robinson Bros.* produce flawed results, I am nonetheless bound by the circuit's opinion. To the extent that Balcor urges that *Robinson Bros.* and *Deprizio* were wrongly decided and represent an incorrect interpretation of the bankruptcy code, it must address its arguments to a higher authority.

## B. Insolvency & § 547(b)(3)

Balcor asserts that it should be relieved of its stipulation of insolvency because it entered into the stipulation before it was able to review the trustee's proposed evidence concerning insolvency. Balcor points me to the circuit's opinion in *In re Westinghouse Elec. Corp. Uranium Contracts Litigation,* 570 F.2d 899, 902 (10th Cir. 1978), for the proposition that a court may relieve a party from an improvident agreement if the original agreement will cause manifest injustice. Noting that the law favors disposition of litigation on the merits, it claims the bankruptcy court abused its discretion when it forced the stipulation on Balcor. I review the bankruptcy court's decision on an abuse of discretion standard.

■ The cases provide no bright line to determine when it is appropriate to release a party from an earlier Fed.R.Civ.P. 16 stipulation. I am variously instructed to prevent hardship to the parties, to prevent manifest injustice and avoid a return to "the old sporting theory of justice," and to allow amendments or modifications where there is little risk of surprise and prejudice to the opposing parties. See generally 6A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1527 at 284–86 (1990). The rule does not apply, however, where the evidence or issue was within the knowledge of the party seeking modification at the time of the stipulation. In such cases, the trial court should not allow the modification. *Burnett v. Dresser Industries, Inc.*, 849 F.2d 1277 (10th Cir.1988).

■ Here, I do not see how the bankruptcy court abused its discretion. Balcor has made no factual showing that it suffered prejudice by being held to its stipulation. During the hearing, it offered no evidence that the presence of the general partners' net worth would significantly alter the financial equation. Nor was it able to show that there would be little or no prejudice to the trustee if, five days before trial, he suddenly had to produce the documents and witnesses necessary to prove insolvency. Finally, I note that the trustee filed his adversary complaint more than a year before the case proceeded to trial. During that time, Balcor had ample opportunity to determine through the usual discovery processes the true solvency of the partners. Its failure to do so should not be laid at the trustee's doorstep.

### C. Evidence of a Lesser Amount—§ 547(b)(5)

Balcor urges me to reverse the bankruptcy court's decision that the transfers allowed it to receive more than it would have received under chapter 7 pursuant to 11 U.S.C. § 547(b)(5). I decline to so rule.

■ The bankruptcy court found that Balcor was a nonrecourse creditor of both estates on the date the partners filed for protection. It found that although Balcor had recorded an assignment of rents, Balcor did not perfect its interests in the rents until the post-petition filing of its notices pursuant to 11 U.S.C. § 546(b). *See Consolidated Capital Income Trust v. Colter, Inc.*, 47 B.R. 1008 (D.Colo.1985). As a nonrecourse creditor, Balcor would have been entitled to receive nothing in a chapter 7 proceeding. *See* 11 U.S.C. § 1111(b)(1)(A); *In re PCH Associates*, 949 F.2d 585, 604 (2d Cir.1991).

■ Balcor does not contest this finding, it simply ignores it. It argues, instead, that the bankruptcy court should have performed a distribution analysis to determine whether it obtained a greater return on its claim than it would have otherwise by surrendering the payments. Even assuming Balcor should be considered an unsecured creditor, I disagree. The trustee testified without contradiction that payments to the unsecured creditors would be less than 100%. In such a situation, the preferential payments to an unsecured creditor allow it to receive more than it would in a chapter 7 proceeding. *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 450, 80 L.Ed. 655 (1936); *Elliot v. Frontier Properties (In re Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir.1985)); *In re Buyer's Club Markets, Inc.*, 123 B.R. 895 (Bankr. D.Colo.1991). I accordingly affirm the bankruptcy court's decision in this respect as well.

### D. Ordinary Course of Business—§ 547(c)(2)

■ Balcor's final argument is that the payments were made in the ordinary course of business and did not arise out of unusual debt collection or payment practices. To satisfy the ordinary course of business exception, a creditor must show that the payments were made in the ordinary course of the creditor's business, made according to ordinary business terms, and made in the ordinary course of business. *Union Bank v. Wolas*, — U.S. —, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). The defense is available for both short-term and long-term debt obligations. *Id.* Ordinary course of business payments do not include payments which arise out of an unusual

debt collection or payment practice. *Marathon Oil Co. v. Flateau (In re Craig Oil Co.)*, 785 F.2d 1563 (11th Cir.1986); *In re Miniscribe*, 123 B.R. 86 (Bankr.D.Colo. 1991). In general, I must look to the parties' earlier business conduct, the common industry practice, and specifically, whether the payment resulted from any unusual action by either the debtor or creditor. *Xtra, Inc. v. Seawinds Ltd. (In re Seawinds Ltd.)*, 888 F.2d 640 (9th Cir.1989); *Courtney v. Octopi, Inc. (In re Colonial Discount Corp.)*, 807 F.2d 594, 600 (7th Cir.1986); *Waldshmidt v. Ranier (In re Fulghum Const. Corp.)*, 872 F.2d 739 (6th Cir.1989).

■ The bankruptcy court's findings are not clearly erroneous and are supported by the record. First, the parties' earlier conduct did not include an escrow or lockbox arrangement. It only included an ordinary promissory note and deed of trust. The escrow agreements were not entered into at the time of the loans. The one was executed nearly 21 months after the corresponding note, the other nearly fifteen months later. Second, there was little evidence tending to show that such lockbox arrangements were used commercially or within the industry except when a loan was in default, where the lender was preparing to foreclose, or where there were other lender relationship problems. Finally, the preferential payments clearly resulted from unusual action on both the debtor and creditor's part. The escrow agreements came into being only after the partners were insolvent and in default on their loans as a way to satisfy Balcor that the rents would not disappear without paying Balcor and the other trade creditors. The bankruptcy court properly treated such an arrangement as an unusual collection effort on Balcor's part. I therefore conclude that the bankruptcy court ruled correctly when it refused to dismiss the complaint on the basis that there was no unusual debt collection practice.

### III. The Trustee's Cross–Appeal

■ The trustee argues that the bankruptcy court erred when it concluded that Balcor was not a controlling insider within the meaning of § 547(b)(4)(B) and § 101(31). I disagree.

■ Under 11 U.S.C. § 101(31)(C)(v), an insider includes one who is in control of the debtor. Case law teaches that I must look to the totality of the circumstances to determine when a creditor has assumed control of the debtor. *In re Finn*, 909 F.2d 903 (6th Cir.1990). In order to control a debtor, a creditor must be so powerful that the debtor becomes a mere instrument or agent of the creditor, unable to make independent policy and personnel decisions. The cases distinguish, however, the creditor who merely takes a sentinel-like position vis a vis the debtor, thereby keeping careful watch over the borrower's activities. *In re Aluminum Mills Corp.*, 132 B.R. 869 (Bankr.N.D.Ill.1991); *Gray v. Giant Wholesale Corp.*, 758 F.2d 1000 (4th Cir.1985); *In re Practical Investment Corp.*, 95 B.R. 935 (Bankr.E.D.Va.1989).

■ I agree with the bankruptcy court's conclusion that Balcor had good cause to monitor the partners's expenses and operations, especially since the loans were in default. Beyond that, the partners retained ultimate control of their destiny. They made day-to-day operating and personnel decisions and exercised general control over the business operations. While it may be true in some cases that "he who has his thumb on the purse has the power,"[3] the mere ability to control does not always equate to control within the meaning of 11 U.S.C. § 101(31)(C)(v). I accordingly affirm the bankruptcy court's decision in this regard as well.

---

3. Otto Von Bismarck, Speech to the North German Reichstag (March 11, 1869) quoted in J. Bartlett Familiar Quotations 553 (E.Beck Ed. 1980).