In re **M & L BUSINESS MACHINE COMPANY, INC., Debtor.**

**Christine J. JOBIN, Trustee of the Estate of M & L Business Machine Co., Inc., Plaintiff,**

**v.**

**Perry S. McKAY, Defendant.**

**Bankruptcy No. 90–15491–CEM. Adv. No. 92–2199–SBB.**

United States Bankruptcy Court, D. Colorado.

May 26, 1993.

Christine J. Jobin, Trustee of the Estate of M & L Business Machine Co., Katch, Wasserman & Jobin, Denver, CO, for plaintiff, debtor.

Craig A. Weinberg, Stevens, Littman & Biddison, Boulder, CO, for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT [1]

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on (1) Defendant's Motion for Summary Judgment with Accompanying Brief filed

---

1. This Amended Order has been issued to correct three minor spelling and grammatical errors.

December 4, 1992, Supplemental Authority in Support thereof filed January 5, 1993, Second Supplemental Authority in Support thereof filed January 25, 1993; (2) Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment, Cross–Motion for Summary Judgment by Plaintiff and Brief in Support Thereof filed February 8, 1993; (3) Defendant's Reply to Trustee's Response RE: Defendant's Motion for Summary Judgment filed March 15, 1993; and (4) Trustee's Supplemental Response to Defendant's Motion for Summary Judgment filed March 30, 1993. The Court, having reviewed the file and being duly advised in the premises, enters the following Memorandum Opinion and Order.[2]

## I. FACTUAL BACKGROUND.

Debtor filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code on October 1, 1990. The case was converted to Chapter 11 shortly thereafter. Christine J. Jobin ("Jobin" or "Trustee") was appointed Chapter 11 Trustee on December 18, 1990. The Court entered an Order on September 26, 1991 re-converting the case to Chapter 7. Jobin was appointed Chapter 7 Trustee on October 1, 1991. The Trustee presently has pending in this District over 400 adversary proceedings to avoid transfers and recover property of the estate. The within proceeding is just one of these actions.

Since its inception in the 1970's, Debtor operated a business and office machine repair business. This business continued to be operated until March 1991, when the Trustee shut it down. Sometime during the early 1980's, Robert G. Joseph ("Joseph"), Daniel F. Hatch ("Hatch"), and David D. Parrish ("Parrish") acquired the stock of Debtor. In 1987, Joseph, Hatch and Parrish began operating a classic pyramid or Ponzi[3] scheme concurrently with the continuing, albeit diminished, legitimate business. They began soliciting and taking in money from over 1,000 third-party "Private Lenders" or "Private Investors" who were promised exceptionally high rates of return[4] for the use of their money ostensibly to buy large quantities of expensive computers and other office equipment. The "Private Investors" were told they would share in substantial profits upon the resale of computers and office equipment which were, in fact, never purchased.

The Trustee subsequently discovered that over 700 boxes, purported to have contained computer equipment, held various combinations of bricks, dirt, or hardened foam. When the scheme collapsed, approximately $83,000,000.00 in post-dated, unpaid checks remained in the hands of various "Private Investors," even though over $74,000,000.00 flowed through Debtor's bank accounts from January 1990 through September 1990.

The Trustee filed the instant Complaint on September 30, 1992, seeking to avoid transfers and recover $43,500.00 paid Defendant within 90 days of the Petition, including one $4,000.00 check which cleared the Bank of Boulder on the date that the Petition was filed. The Defendant moved for summary judgment on several grounds. The Trustee filed a cross-motion for summary judgment. This Court has dealt simultaneously with both motions herein.

Briefly, this Court finds for the Trustee on her First (§ 547(b)), Second (§ 548(a)(1)), and Fourth (§ 549) Claims. This Court finds for the Defendant, in part, on his "new value" defense as an exception to

---

2. The various arguments presented by the parties in the myriad summary judgment pleadings and briefs before this Court are not parallel, or they do not otherwise track with each other; they are somewhat jerry-built and sometimes not responsive or coordinate with one another. This causes considerable confusion. A significant portion of this Court's time was needed to sort out and align the parties' respective positions.

3. *See, Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924) (the "original" Ponzi scheme).

4. During 1990, a typical transaction consisted of a $100,000.00 loan to Debtor for a two-week period with the promise of a 12% return, or an annual interest rate of approximately 312%. At the time they gave their money, the "Private Investors" received a series of post-dated checks and/or promissory notes.

preference transfers (11 U.S.C. § 547(c)(4)). Inasmuch as material factual issues remain with regard to the Trustee's Third Claim (§ 548(a)(2)) and Defendant's Affirmative Defense of "Good Faith" embodied in Section 548(c), summary judgment cannot be granted on that claim.

## II.  LEGAL ANALYSIS.

### A.  *Summary Judgment Standards.*

■ Summary judgment is a drastic remedy and may be granted only where there is no genuine issue of material fact and where the movant is entitled to judgment as a matter of law. *Carey v. U.S. Postal Service*, 812 F.2d 621 (10th Cir. 1987); *Grayson v. American Airlines, Inc.*, 803 F.2d 1097 (10th Cir.1986). In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the party opposing the motion. *Lindley v. Amoco Production Co.*, 639 F.2d 671 (10th Cir.1981). *See, also, Frito–Lay, Inc. v. Retail Clerks Union Local No. 7*, 629 F.2d 653 (10th Cir.1980); *In re American Cable Publications, Inc.*, 62 B.R. 536 (D.Colo.1986); *In re Mueller*, 34 B.R. 869 (Bankr.D.Colo. 1983).

### B.  *First Claim for Relief—11 U.S.C. § 547(b).*

A trustee

may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;  and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ The initial burden lies on the Trustee to establish the elements of Section 547(b) by a preponderance of the evidence. Once accomplished, the burden shifts to the Defendant to establish that one of the exceptions apply. *In re Financial Partners, Ltd.*, 116 B.R. 629, 634 (Bankr.N.D.Ill. 1989). 11 U.S.C. § 547(g). *See, generally, Union Bank v. Wolas*, —— U.S. ——, ——, 112 S.Ct. 527, 529, 116 L.Ed.2d 514 (1991); *Vance v. Dugan*, 187 F.2d 605 (10th Cir. 1951).

■ As a preliminary matter, this Court is not persuaded by the Defendant's argument that, as a matter of public policy, preference actions are not an available remedy when dealing with Ponzi schemes. *In re Independent Clearing House Co.*, 77 B.R. 843, 871 (D.Utah 1987) ("The equitable solution would be either to apply the [preference] statute to all transfers to investors in a Ponzi scheme—without regard to when the transfers were made—or to apply the statute to none of the transfers."). The *Independent Clearing House* court, although recognizing the potential inequities, found itself bound by the language of the statute.[5] This Court agrees. So too, this Court is not convinced that the equities all lie in the Defendant's favor, particularly in light of the fact that some of the Debtor's creditors are not "Private Investors."[6]

---

**5.** The Court concluded, "[y]et this court is no more free to rewrite the statute to bring the early [investors] into its net than it is to ignore the statute to treat later [investors] equally. Courts must apply the statute as written." *In re Independent Clearing House Co.*, 77 B.R. 843, 871 (D.Utah 1987).

**6.** Pre-petition trade debt totals approximately $20,000.00 and Chapter 11 administrative expenses for rent and wages exceed $50,000.00.

Moreover, under these circumstances, the argument for leaving the Defendant as he is found is clearly contrary to one of the Code's primary purposes, i.e., to treat all similar creditors equally.

The Direct Testimony of the Trustee, by Affidavit attached to her Brief, establishes that (1) property of Debtor was transferred, (2) the transfers were made within 90 days of the Petition, and (3) the transfers allowed the Defendant to receive more than he would have received under a Chapter 7 liquidation. Further, according to Direct Testimony of E. Jayne (McCarthy) MacPhee of Patten, McCarthy & Associates, by Affidavit attached to the Trustee's brief, Debtor was insolvent at the times that the various subject transfers were made.[7] The Defendant does not appear to contest these allegations. Also, the Defendant does not dispute the requisite elements of (1) his status as a creditor, and (2) payment made on account of an antecedent debt.

This particular case involves, predominantly, no issues of material fact in dispute. This Court, therefore, concludes that the Trustee has carried her burden of satisfying the five elements of Section 547(b) by essentially unrefuted factual recitals, and by a preponderance of the evidence.

Hence, the burden shifts to this Defendant to establish the applicability of an exception under Section 547(c) and/or factual disputes such that summary judgment cannot be awarded by virtue of subsection (c). *Financial Partners, supra* 116 B.R. at 634. *See, generally, In re Craddock,* 1992 WL 406394 (Bankr.D.Colo.1992) ("Faced with a motion for summary judgment, supported by the claim with its evidentiary effect, the Debtor was obligated to come forward with evidence in the form of affidavits, stipulated facts, depositions or other discovery responses sufficient to either rebut the evidentiary effect of the proof of claim or to raise a dispute concern-

ing a material fact. *Celotex Corp. v. Catrett,* [477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)]; *Applied Genetics International, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).").

### 1. First Claimed Preference Exception—11 U.S.C. § 547(c)(2).

Defendant argues that the transactions fall within two exceptions to the preference statute. First, under the Bankruptcy Code, a trustee may not avoid an otherwise preferential transfer where the transfer was

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial ↳ ffairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

■ The Bankruptcy Code does not define "ordinary course of business" or "ordinary business terms" and the legislative history is sparse.[8] However, this Court construes that an underlying purpose of this exception is to leave undisturbed routine and normal financial transactions so as to protect customary business and credit relationships formed, or occasioned, as part of lawful commercial activity.

The term "ordinary," so pervasive in the statute, is the Court's benchmark for application of the exception.

To satisfy the ordinary course of business exception, a creditor must show that the payments were made in the ordinary course of the creditor's business, made according to ordinary business terms, and made in the ordinary course of business.

---

**7.** Some courts have found that, "[b]y definition, an enterprise engaged in a Ponzi scheme is insolvent from day one." *Independent Clearing House, supra,* 77 B.R. at 871. As Debtor was an established business and continued to conduct legitimate business, at least to some degree, up until the date of the Petition, this Court cannot adopt such a blanket statement in the present case.

**8.** *See, In re Fulghum Constr. Corp.,* 872 F.2d 739, 743 (6th Cir.1989).

*In re Meridith Millard Partners*, 145 B.R. 682, 687 (D.Colo.1992).

■ This exception to recovery of an otherwise preferential transfer should be narrowly construed. *See, In re Meridith Millard Partners*, 145 B.R. 682 (D.Colo. 1992); *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 96 B.R. 474, 476 (D.N.J. 1988), *aff'd*, 891 F.2d 66 (3rd Cir.1989). Moreover, in order to successfully advance the defense, all three elements under the statute must be satisfied by the Defendant. *Fidelity Savings and Investment Co. v. New Hope Baptist*, 880 F.2d 1172 (10th Cir.1989).

■ While many courts have held that the ordinary course of business exception simply does not apply to transfers in furtherance of a Ponzi scheme,[9] this Court believes that such holdings may be simple over-generalizations designed to shortcut the process of applying the specific fact situations to the elements of the exception.[10] This is an appealing and convenient rule and may, indeed, prove to be good law, but this Court will briefly evaluate the exception in this case on its own merits.

Defendant may be able to demonstrate that the underlying debt and subject payments were made "in the ordinary course of business" between the Debtor and himself, particularly since the Trustee does not appear to dispute this point.[11] However, in order to successfully invoke the ordinary course of business exception under subsection (c)(2), the creditor here must deal with two elements of the subsection. The first element is in subsection (c)(2)(C)—payments—"made according to ordinary business terms."

Defendant alleges that the subject payments were "totally in conformity with ... other entities engaged in the same type of fraudulent business." Defendant's Motion for Judgment with Accompanying Brief, at p. 12. In short, Defendant argues, without substantiation, that the payments were "incurred in the ordinary course of this Debtor's **fraudulent business**." *Id.* (emphasis added).[12] The Trustee counters that it is simply incredible to argue that such payments are within the ordinary course of business "for a **business machine sales and service company**." Memorandum Brief in Opposition, at p. 9 (emphasis added). While the Court believes the Trustee's argument is more sound and case law based, the Court concludes that both parties may well have missed the real question: Were these debts incurred and payments made according to common and ordinary business terms—period?

The Bankruptcy Code does not qualify this element, subsection (c)(2)(C), to make it necessarily subject to the particularities and peculiarities, or the specific practices, of one entity, a single category of commerce, or a specified business area, but to

---

**9.** *See, Henderson v. Buchanan*, 985 F.2d 1021 (9th Cir.1993); *In re Bullion Reserve of North America*, 836 F.2d 1214 (9th Cir.1988), *cert. denied, sub nom, Bozek v. Danning*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 819 F.2d 214 (9th Cir.1987) (finding a Ponzi scheme is not a "business" thus not in "ordinary course of business"); *Wider v. Wootton*, 907 F.2d 570 (5th Cir.1990); *In re Montgomery*, 123 B.R. 801 (Bankr.M.D.Tenn.1991), *aff'd*, 136 B.R. 727 (M.D.Tenn.1992), *aff'd*, 983 F.2d 1389 (6th Cir.1993); *In re Baker & Getty Financial Services, Inc.*, 88 B.R. 792 (Bankr.N.D.Ohio 1988), *appeal decided by* 974 F.2d 712 (6th Cir. 1992); *In re Southern Indus. Banking Corp.*, 87 B.R. 524 (Bankr.E.D.Tenn.1988).

**10.** *But see, Sender v. Walan,* Civil Action No. 92–F–924 (Chief Judge Finesilver of the District Court's jury instruction involving the exception read as follows:

If you find that the debts owed by HIA, Inc. to AFW Hedged, Ltd. and Susan Walan were incurred because of HIA, Inc.'s fraud, you must find that AFW Hedged, Ltd. and Susan Walan have failed to prove the ordinary course of business defense.) (Emphasis added.)

**11.** As of yet, however, Defendant has presented no real evidence to establish this alleged course of dealing.

**12.** Defendant further argues that the Trustee has somehow admitted his status as falling within the ordinary course of business exception by way of an affidavit submitted in an unrelated case dealing with the existence and payment of ordinary trade debt is unpersuasive and borders on speciousness.

"business," or to commerce, in general. *Accord, In re Schraiber,* 1992 WL 280801, at *17 (Bankr.N.D.Ill.1992) (not reported in B.R.); *First Federal of Michigan v. Barrow,* 878 F.2d 912, 918 (6th Cir.1989). Even if this Court were to find that the practices of one particular industry should be considered and controlling, then this Court would find that the practice of a business machine sales and service company would be the appropriate measure of business conduct, particularly in light of the Defendant's admitted intent to invest in such an endeavor.

In general terms, this Court finds that neither (1) a promissory note providing for grossly usurious interest rates, which is illegal under state law,[13] and to be paid by the issuance of a series of post-dated checks, (2) coupled with payment in such a form, could possibly come under the penumbra of "ordinary business terms" with relation to either "business," or commerce. This finding applies equally well, perhaps more so, with regard to the operation of a business machine sales and service company, in particular. 11 U.S.C. § 547(c)(2).

Other judges in this District have made similar conclusions with respect to other Ponzi schemes. *See, Sender v. Greenlee,* Adversary Proceeding No. 91–1930–CEM (oral ruling rendered June 11, 1992)[14] and *Sender v. Perczak,* Adversary Proceeding No. 91–1799–PAC (oral ruling rendered November 20, 1992).[15]

■ A second important element in ascertaining whether this (c)(2) exception may be successfully invoked by the Defendant is whether the transfer was in payment of a "debt incurred by the debtor **in the ordinary course of business or financial affairs of ... the transferee** [Defendant]" ((c)(2)(A)), and made in the **"ordinary course of business ... of the transferee** [Defendant]" ((c)(2)(B)). What, after all, is the Defendant's ordinary course of business? Lending? Lending at usurious interest rates? Investing? Investing and taking back usurious promissory notes?

The Defendant here has not provided any evidence whatsoever, or advanced the argument, that **his ordinary business,** or financial affairs, involves lending at usurious and illegal interest rates, or otherwise taking promissory notes with usurious, illegal and unenforceable interest rates. If the Defendant was in that business, or was otherwise ordinarily engaging in a business arguably similar to "loansharking," then, perhaps, this exception to preferential recovery might, conceivably, be successfully advanced. The record now before the Court, and evidence proffered by the Defendant, provides no support for that position.

Accordingly, this Court finds that the requirements of the "ordinary course of business" exception contained in Section 547(c)(2) simply have not been satisfied in the present situation. Therefore, the ordinary course of business exception has not been properly invoked by this Defendant and it does not serve to protect the payments at issue from recovery by the Trustee.

### 2. *Second Claimed Preference Exception—11 U.S.C. § 547(c)(4).*

■ Defendant next argues that the transactions fall within the "new value" or

---

**13.** The facts of this case allow an inference that Colorado law, civil and criminal, would impact the conduct and enforcement of these loan type transactions:

> Any person who knowingly charges, takes, or receives any money or other property as a loan finance charge where the charge exceeds an annual percentage rate of forty-five percent or the equivalent for a longer or shorter period commits the crime of criminal usury, which is a class 6 felony.
> 8B C.R.S. § 18–15–104(1) (1989).
> *See,* C.R.S. § 5–12–103, wherein 45% rate of interest is fixed as a maximum permissible, enforceable rate of interest.

**14.** Chief Judge Matheson concluded, "[w]hen we have a company that is insolvent, not making money, reporting false profits and paying what it is falsely reporting, I hardly feel that that is an obligation or a payment made in the ordinary course of any reputable business. Certainly it's not one made according to ordinary business terms." Transcript, p. 16.

**15.** Judge Clark determined that it is not the ordinary course of business to misappropriate funds and return investments when the payor entity is insolvent.

partial "subsequent value" exception expressed at Section 547(c)(4). A trustee may not avoid an otherwise preferential transfer where the transfer was

> to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>> (A) not secured by an otherwise unavoidable security interest; and
>> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4).

"New value" for purposes of Section 547 is

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2).

Defendant argues that he gave "new value," or made subsequent advances by check to the Debtor which effectively "cured" a portion of the preferential transfers.[16] The Trustee argues, however, that the "new value" must constitute a material benefit to the estate and that monies used merely to perpetuate a Ponzi scheme do not meet the requirements of the exception.[17] *See, Independent Clearing House, supra* 77 B.R. at 859. This Court reads neither Section 547(c)(4) nor Section 547(a)(2) to necessarily require a material benefit to the estate. It appears that "new value," in the form of money, was indeed subsequently advanced by Defendant to the Debtor. *Accord, Jobin v. Brown,* Adversary No. 91–1607–RJB (Memorandum Opinion and Order on Summary Judgment dated October 26, 1992, at p.4).

A question arises however: In order for the "new value" exception to be viable and serve as a bar to Trustee's preference avoidance and recovery, must the "new value" remain unpaid, in whole or in part, as of the debtor's bankruptcy filing? *See, In re White River Corp.,* 50 B.R. 403, 409–410 (Bankr.D.Colo.1985), *rev'd on other grounds,* 799 F.2d 631 (10th Cir.1986). Subsequent to *White River,* this Circuit has provided little guidance in this area. *See, In re Electronic Metal Products, Inc.,* 916 F.2d 1502 (10th Cir.), *reh'g denied,* December 21, 1990 ("net result rule" rejected).

**16.** The Trustee's Exhibit V establishes the following sequence of events:

| DATE | INVESTOR DEPOSITS TO DEBTOR | DEBTOR'S PAYMENTS TO INVESTOR |
|---|---|---|
| 7/30/90 | | $10,000.00 |
| 8/3/90 | | $750.00 |
| 8/28/90 | | $10,000.00 |
| 9/5/90 | | $750.00 |
| 9/7/90 | $50,000.00 | |
| 9/10/90 | $25,000.00 | |
| 9/10/90 | $25,000.00 | |
| 9/21/90 | | $4,000.00 |
| 9/24/90 | | $4,000.00 |
| 9/26/90 | | $10,000.00 |
| 10/1/90 | | $4,000.00 |
| TOTAL: | $100,000.00 | $43,500.00 |

**17.** No allegations have been made concerning the existence of an otherwise unavoidable security interest granted to the creditor pursuant to Section 547(c)(4)(A).

The "overwhelming majority" of courts have previously held that the "new value" must remain unpaid in order for Section 547(c)(4) to apply. *In re American Int'l Airways, Inc.*, 56 B.R. 551, 554 (Bankr. E.D.Pa.1986) (cases cited). More recently, however, the "trend ... is in the opposite direction: holding that new value need not remain unpaid based upon exhaustive analysis of the underpinnings of the legislative and statutory framework." *In re Ladera Heights Community Hospital, Inc.*, 152 B.R. 964 (Bankr.C.D.Cal.1993). The court in *Ladera Heights* observed, in a lengthy and well-reasoned opinion, that:

> [T]he **plain language** of Section 547(c)(4) contains no requirement that new value must remain unpaid. [Citation omitted.] The **legislative history** ... is equally devoid of language imposing such a requirement. Most telling, however, is the fact that **Congress deleted the restrictive language** of the former Section 60(c) which limited the new value exception to 'the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy.'
> *Id.*, at 968 (emphasis added).

The view of the law adopted by the *Ladera Heights* court appears to "comport[ ] not only with the language of the statute and congressional intent, but also serve[ ] the legislative goal of encouraging creditors to maintain business relationships with financially troubled enterprises by recognizing the commercial realities of these transactions." *Id.*, at 969. (One might argue that this Court should not be concerned with encouraging third-parties to continue paying money into, and thereby perpetuating a Ponzi scheme. Such a distinction based upon a particular factual situation is neither supported by the Bankruptcy Code nor apparent in expressed legislative intent.[18]) This Court finds, moreover, that such an interpretation does not do violence to the ultimate holding of

*White River* or similar (though scarce) cases in this District.

This Court concludes that application of Section 547(c)(4) to the present case is appropriate, in part, and protects the first four payments at issue, or $21,500.00, but not the final four payments totalling $22,000.00, from recovery by the Trustee as preferential transfers.[19]

## C. Second Claim for Relief—11 U.S.C. § 548(a)(1).

■ A trustee may avoid a transfer of property or any obligation incurred by a debtor that was made or incurred

> within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1).

■ The affidavits submitted in support of the Trustee's Motion for Summary Judgment set forth uncontroverted evidence that transfers of Debtor's property occurred and that the transfers occurred within one year of the bankruptcy filing. The only issue which remains is the Debtor's intent. The Trustee must prove actual fraudulent intent. A court may, and in many cases must, rely on circumstantial evidence in making a finding of actual intent. *Fish v. East*, 114 F.2d 177 (10th Cir.1940); *In re Faires*, 123 B.R. 397 (Bankr.D.Colo.1991); *In re Booth*, 70 B.R. 391 (Bankr.D.Colo.1987). *See*, C.R.S. §§ 38–8–105 and 38–10–117.

> Fraudulent intent may be established, and usually must be, by circumstantial evidence or by inferences drawn from a

---

**18.** Such an argument leads to the proverbial "slippery slope." Without expressed and explicit legislative intent to refrain from applying this, or any other Code provision, to debtors in particular "businesses," the subjective moral interpretations of the various courts would prevail

and lead to dramatic uncertainty across the country.

**19.** This conclusion does not necessarily mean that $21,500.00 is absolutely protected from recovery by the Trustee. *See*, continued discussion, *infra*.

course of conduct. Subsequent conduct, itself, is often probative of a debtor's intent on a prior occasion. *In re Farmers Cooperative Ass'n of Talmage, KS v. Strunk,* 671 F.2d 391 (10th Cir.1982).

*In re Greenwalt,* 63 B.R. 555, 559 (Bankr.D.Colo.1986).

When faced with a similar Ponzi scheme, one court found as follows:

One can infer an intent to defraud future [Ponzi participants] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge as to a substantial certainty constitutes intent in the eyes of the law ... and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. [Citation omitted.]

Although the question of the debtor's intent would ordinarily present a factual question, we conclude that, from the undisputed evidence in the record, only one inference is possible—namely, that the debtors had the intent to hinder, delay or defraud creditors. The trustee's undisputed evidence is that the debtors were engaged in a Ponzi scheme and therefore must have known that the [participants] at the end of the line would lose their money. That is the only evidence there is.

*Independent Clearing House, supra* 77 B.R. at 860.

This Court believes that the reasoning and conclusion of the District Court sitting *en banc* in *Independent Clearing House,* is sound and legally correct. This Court can and does make similar inferences from the essentially unrebutted evidence produced, regarding the intent of the Debtor, and in so doing, determines that judgment should be entered in the Trustee's favor on Count Two (Section 548(a)(1)) as a matter of law.

### D. *Third Claim for Relief—11 U.S.C. § 548(a)(2).*

Similarly, a trustee may avoid a transfer of property or any obligation incurred by a debtor that was made or incurred

within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\*   \*   \*   \*   \*   \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(2).

For purposes of Section 548,

'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

11 U.S.C. § 548(d)(2)(A).

The affidavits submitted in support of the Trustee's Motion for Summary Judgment set forth uncontroverted evidence that transfers of Debtor's property occurred, that the transfers occurred within one year of the bankruptcy filing, and that each of (not just one of) the elements in

Section 548(a)(2)(B) are present. Defendant contests only the sole remaining element, the issue of "reasonably equivalent value." 11 U.S.C. § 548(a)(2)(A).

Defendant argues that the payments he received reduced ⸱his restitution claim [20] against the Debtor and that the reduction of the restitution claim provided "reasonably equivalent value." The Trustee concedes that, in some instances, reduction of a restitution claim may provide "value." [21] The Trustee argues that a factual question exists on this issue however because

> [i]f investments were made with culpable knowledge, all subsequent payments made to such investors within one year ... would be avoidable ... regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments.
> *In re United Energy Corp.*, 944 F.2d 589, 596 n. 7 (9th Cir.1991) (citing *Independent Clearing House, supra* 77 B.R. at 857–858.)

The Trustee maintains that payment of usurious interest "coupled with the use of post-dated checks, the circumstances under which investors were enlisted in the scheme, and the caliber of those involved in peddling the 'investments,' served to put [Defendant] and others on notice of the fraudulence [sic] involved in the transactions." Memorandum Brief in Opposition, p. 38–39. Such "knowledge, actual or constructive, measured by an objective standard, negates the claim that 'reasonably

equivalent value' was given. Significant genuine issues of material fact concerning what [Defendant] knew or should have known, given the circumstances, remain at issue." *Id.*, at 39.

This Court finds that, while it appears to be generally uncontroverted that "value" in the form of a reduction in Defendant's restitution claim has been given, an issue of material fact remains as to the Defendant's state of mind which goes directly to the "reasonably equivalent" element so as to preclude entry of summary judgment on the Third Claim for Relief.[22] *See, generally, In re PERMA Pacific Properties*, 983 F.2d 964, 968 (10th Cir.1992) ("Although the intent or state of mind of the parties is not materially dispositive of whether or not a transfer is a preference, ... we can see no impediment to allowing the bankruptcy court to look at the nature of the transaction and the relationship among the parties.").

### E. Fourth Claim for Relief—11 U.S.C. § 549.

■ With regard to the final $4,000.00 payment made [23] to Defendant on October 1, 1990, the day that the Voluntary Petition was filed, the Trustee argues alternatively (1) that the payment occurred pre-petition and should be treated just like the other seven pre-petition payments, or (2) that the payment occurred post-petition and was not

**20.** *See, In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir.1991) (defrauded investors "clearly had claims for rescission and restitution [against the debtor] which arose when they bought the [investment], regardless of whether there existed a contractual right to the return of principal").

**21.** The Trustee appears to have subsequently backed away from this concession. Trustee's Supplemental Response to Defendant's Motion for Summary Judgment, at p. 1.

**22.** Defendant also argues that the exception established by Section 548(c) (taking for value and in good faith) applies here. The unsubstantiated statements made by Defendant that he did not know [Debtor] was a Ponzi scheme either *before* or *during* the duration of his investment, and that he was unaware that

[Debtor] was insolvent when he received interest payments [and] ... that he was an unwitting investor who, like hundreds of others, was defrauded by [Debtor] causing him to lose substantial funds [and] ... that Defendant ... was, at all times, acting in good faith are insufficient by themselves to carry Defendant's burden as to this defense, particularly in light of the Trustee's arguments to the contrary. Defendant's Motion for Summary Judgment with Accompanying Brief, at p. 7. Further, the question of "good faith" almost by necessity demands a factual inquiry by the Court, therefore, summary judgment is inappropriate.

**23.** In actuality, the check was tendered sometime prior to October 1, 1990. The check was paid or honored by the Bank on October 1, 1990. *See, Barnhill v. Johnson*, —— U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992).

authorized either by the Bankruptcy Code or by Court order. 11 U.S.C. § 549(a).[24]

As the Voluntary Petition does not indicate the time on October 1, 1990 that it was filed, this Court is unable to determine with any degree of certainty which came first, the "chicken" (petition) or the "egg" (payment on the check). Fortunately, in light of the instant determination, it makes no difference in the ultimate result. If payment occurred pre-petition, it would be treated like the other payments that clearly occurred pre-petition. If payment occurred post-petition, it was unauthorized. Summary judgment should enter in favor of the Trustee on Count Four as well.

F. *Fifth Claim for Relief—11 U.S.C. §§ 542 and 550.*

The final claim is for recovery and turnover of amounts determined to be avoidable under prior claims for relief. This claim is not explicitly a subject of the pending cross-motions for summary judgment.

### III. CONCLUSION.

For the reasons cited herein, it is

ORDERED that Defendant's Motion for Summary Judgment filed December 4, 1992 is DENIED, IN PERTINENT PART, as to:

1.  Application of Section 547 to "Ponzi Schemes" (First Claim);

2.  Defending the Trustee's preference claims pursuant to the "ordinary course of business" exception (Section 547(c)(2)) (First Claim).

3.  Defending the Trustee's fraudulent transfer claim pursuant to Section 548(a)(1) and (a)(2); the latter involving questions of fact to be determined at trial (Second and Third Claims).

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judg-ment filed December 4, 1992 is GRANTED, IN PERTINENT PART, as to:

1.  Application and use of the "new value" exception to Trustee's preference claims pursuant to Section 547(c)(4) (First Claim).

IT IS FURTHER ORDERED that Trustee's Cross–Motion for [Partial] Summary Judgment filed February 8, 1993 is GRANTED, IN PERTINENT PART, as to:

1.  The application of 11 U.S.C. § 547 to Ponzi schemes in general (First Claim).

2.  Satisfaction of the elements of 11 U.S.C. § 547(b)(1)–(5) establishing the event of preferential transfers to this Defendant (First Claim).

3.  Failure of Defendant to establish the elements of his "ordinary course of business" defense (Section 547(c)(2)) (First Claim).

4.  Satisfaction of the elements of transfers made to hinder, delay, or defraud creditors, pursuant to Section 548(a)(1) (Second Claim).

5.  Relief under the recovery of post-petition alternative claims for relief pursuant to Section 549 (Fourth Claim).

IT IS FURTHER ORDERED that Trustee's Cross–Motion for [Partial] Summary Judgment filed February 8, 1993 is DENIED, IN PERTINENT PART, as to:

1.  Failure of Defendant to establish the elements of the 11 U.S.C. § 547(c)(4) "new value" defense (First Claim).

2.  Trustee's claims for a transfer without reasonably equivalent value pursuant to Section 548(a)(2) (Third Claim).

---

**24.** Defendant contends that the payment was "certainly within the ordinary course of this Debtor's business" and, thus, authorized by Section 363(c)(1) without Court approval. Defendant's Motion for Summary Judgment with Accompanying Brief, p. 14. 11 U.S.C. § 549(a)(2)(B). As this Court has previously determined, one is hard-pressed to establish that continuance of a Ponzi scheme **pre-petition** is "in the ordinary course of business." This Court finds that the conclusory statement cited above utterly fails to establish that the provisions of the Bankruptcy Code would embrace the ability of a debtor to continue a Ponzi scheme **post-petition** without Court approval or supervision.