**In re John J. DURKAY, Debtor.**

**Gus J. BAHAS, Trustee, Plaintiff,**

v.

**Burt H. SAGEN, Defendant.**

**Bankruptcy No. B79–02118.**
**Adv. No. B80–0008.**

United States Bankruptcy Court,
N. D. Ohio, E. D.

Jan. 22, 1981.

Jerome Leiken and Robert C. Bowes, Nadler, Sokolsky, Bahas & Balantzow Co., L.P.A., Cleveland, Ohio, for Trustee.

Paul Mancino, Jr., Cleveland, Ohio, for defendant, Burt H. Sagen.

Richard B. Ginley, Cleveland, Ohio, for debtor, John J. Durkay.

## MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came on for hearing on the complaint of plaintiff, Gus J. Bahas, Trustee, filed pursuant to Title 11 U.S.C. Section 547 of the Bankruptcy Code, to void a transfer of funds to the defendant, Burt H. Sagen, the answer of defendant, the evidence and oral arguments of counsel.

### Findings of Fact

The testimony in this case indicated that debtor and defendant knew each other for more than 25 years, and that defendant, an attorney at law, represented debtor, debtor's wife, the Durkay Agency Inc., the John Durkay and Associates Insurance Agency, Inc. and the Durkay Shipka Agency, Inc. for many years. During the course of this representation, debtor on January 18, 1977, transferred a quit-claim deed for his residence to R. & B. Restoration, Inc., a corporation principally owned and controlled by defendant. Debtor testified that this transfer was made in an arrangement to pay past attorney fees. Debtor continued to live at the address now owned by R. & B. Restoration, Inc., but was paying rent for the premises.

Debtor and defendant also testified that defendant represented debtor and the various Durkay corporations in a series of complex litigations involving debtor and his corporations against Theodore A. Livingston, the Central National Bank of Cleveland, the Brooks & Stafford Co., Walter Shipka, Helen Shipka, Shipka Agency, Inc. and Broadview Savings and Loan Co. Defendant testified that this litigation involved numerous trial appearances, and the reasonable value of his services was $25,000.

On April 2, 1979, debtor discharged defendant as his attorney while an appeal was pending in the litigation and before one of the other related cases went to trial.

On May 3, 1979, a judgment entry was docketed in the Ohio Court of Appeals, incorporating a settlement between debtor and his adversaries in the various cases. This settlement gave $9,000 to debtor and his companies from The Brooks & Stafford Co., Walter Shipka and The Broadview Savings & Loan Co. Aware of this judgment entry, defendant filed an "Affidavit in Support of Attorney Lien" on May 2, 1979, in an attempt to perfect his claimed attorney's lien. While this affidavit contained no certificate of service, it is apparent from a letter admitted into evidence that The Brooks & Stafford Co. attorneys had actual knowledge of the claimed attorney's lien. A Receiver Special Master was appointed to receive monies from the judgment debtors and distribute the same to the appropriate parties. The Receiver Special Master also had knowledge of the claimed attorney's lien.

On May 8, 1979, R. & B. Restoration, Inc. filed an eviction complaint in Berea Munici-

pal Court against debtor for alleged non-payment of rent. On May 22, 1979, a default judgment was entered against debtor, and a writ of restitution to the Berea bailiff was entered on the same day.

On June 1, 1977, R. & B. Restoration, Inc., defendant, debtor, debtor's wife, Durkay Agency, Inc. and John Durkay and Associates Insurance Agency, Inc. entered into a mutual release settling all claims between them. This agreement provided for an immediate payment of $5,000 in cash, which debtor testified was borrowed by his wife. The agreement also contained an acknowledgment of defendant's claimed attorney's lien on the settlement previously made, and provided for an assignment of the total $9,000 settlement payment to defendant. The evidence indicated that this payment was made to the defendant on August 14, 1979.

On October 22, 1979, debtor filed this Chapter 7 proceeding under the Bankruptcy Reform Act of 1978.

### Conclusions of Law

The Trustee now wishes to invalidate both the $5,000 and $9,000 payments under Section 547 of the Bankruptcy Code. Since each payment raises different legal issues, they will be discussed separately.

Because the $5,000 payment was made before the 90-day preference period in bankruptcy, the Trustee has attempted to demonstrate that defendant was an "insider" and thus subject to the one-year preference period defined by Section 547(b)(4)(B).[1] The term "insider" is new in bankruptcy

law, and is defined by Section 101(25) as follows:

" 'insider' includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control; * * * "

The Trustee was unable to show that defendant fit any of the specific examples in Section 101(25)(A). However, the Trustee argues that the language of Section 101(25)(A), especially if interpreted in light of Section 102(3),[2] allows the courts to include other "insiders" not specifically mentioned in the statute. Since attorneys frequently acquire inside information about a debtor's financial situation right before bankruptcy, the Trustee feels that they should also be subject to the longer preference period under Section 547(b)(4)(B).

While it is true that Section 101(25) is not an exclusive list of insiders, the mere showing that defendant had been an attorney of the debtor was not intended by Congress to automatically trigger the insider provisions of Section 547. Strong evidence of this congressional intent can be found in the Code. In Section 502(b)(5), Congress stated that a claim by an insider *or attorney of the debtor* for services may be disallowed to the extent that it exceeds the reasonable value of such services.[3] This

---

1. Section 547(b) provides, in pertinent part, as follows:

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

* * * * * *

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and * * *

2. Section 102, in pertinent part, provides as follows:

"*Rules of construction.* In this title—

* * * * * *

(3) 'includes' and 'including' are not limiting; * * * "

3. Section 502(b) provides, in pertinent part, as follows:

"Except as provided in subsections (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a

section demonstrates a congressional realization that the term "insider" does not automatically include an attorney of the debtor. Had Congress intended an attorney of the debtor to be automatically included under Section 547(b)(4)(B), it could have easily used the same language as Section 502(b)(5).

■ Further evidence of this congressional intent to not automatically include attorneys as insiders can be found in the insider definition itself. All the examples in Section 101(25) are of situations where one can assume a high likelihood of control. In the present case, debtor and defendant were certainly not in such a relationship at the time of the alleged preferential transfer. On June 1, 1979, defendant was no longer debtor's attorney, and defendant's corporation was attempting to evict debtor and his wife from their home. This evidence clearly demonstrates that defendant was not an insider at the time of the transfer, and thus the $5,000 payment could not be subject to attack under Section 547.

■ Unlike the $5,000 payment, the $9,000 payment received by defendant on August 14, 1979 was within the automatic 90-day preference period in Section 547(b)(4)(A).[4] However, defendant asserts that because of his attorney's lien, other creditors were not prejudiced as required by Section 547(b)(5). To avoid a preferential transfer, all the elements in Section 547(b) must be met. Section 547(b), in pertinent part, provides as follows:

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

\* \* \* \* \* \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

■ Crucial to this determination is whether defendant did in fact have a valid attorney's lien under Ohio law. Ohio law does recognize attorney's liens based on the equitable principle that an attorney should be reimbursed for his or her efforts when those efforts have created a fund for the benefit of creditors. *Cohen v. Goldberger,* 109 Ohio St. 22, 141 N.E. 656 (1923); *In Re Kelly,* No. 1–80–00591 (Bankruptcy Court, S.D.W.D.Ohio, Oct. 2, 1980). However, under Ohio law this attorney's lien cannot arise before judgment has been obtained for the client. *Pennsylvania Co. v. Thatcher,* 78 Ohio St. 175, 85 N.E. 55 (1908); *In Re Hronek,* 563 F.2d 296 (6th Cir. 1977).[5]

■ In the present case, the evidence showed that defendant had an attorney's lien before the 90-day preference period of Section 547(b)(4). Defendant's uncontroverted testimony was that he had represented debtor in a series of cases, all dealing with the same underlying controversy with The Brooks & Stafford Co. The consolidated cases were resolved in the Ohio Court of Appeals, which resulted in a $9,000 judgment entry for the debtor. Since this fund existed because of defendant's efforts as attorney for the debtor, he would be entitled to an attorney's lien under the equitable doctrine of *Cohen v. Goldberger, supra.*

■ It is also apparent from the *Cohen v. Goldberger* case that an Ohio attor-

hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

\* \* \* \* \* \*

(5) if such claim is for services of *an insider or attorney of the debtor,* such claim exceeds the reasonable value of such services; \* \* \*" (emphasis added)

4. See Footnote 1, *supra.*

5. *In Re Hronek,* has been referred to this court for the proposition that no Ohio attorney's lien is valid in bankruptcy. However, in that case, the debtor's state suit was not reduced to judgment until after bankruptcy was filed. Thus, the attorney's lien was an avoidable post petition transfer, and could not have attached before the preference period.

ney's lien passes the perfection and transfer requirements of Section 547(e).[6] Under Section 547(e)(2), a transfer is not made unless it is perfected. Under Section 547(e)(1), a transfer of property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien superior to the interest of the transferee. In the *Cohen* case, an attorney had a judgment for his client affirmed by the Court of Appeals. The attorney then filed a motion requesting that an attorney's lien be placed on the judgment funds. · A creditor of his client subsequently filed an intervening petition asking for the entire judgment. The Supreme Court of Ohio, however, gave priority to the attorney's fees. Therefore, since an intervening creditor cannot acquire an interest superior to the attorney's interest, a properly perfected Ohio attorney's lien is valid in bankruptcy.

The only remaining question then is whether defendant's lien was properly perfected so as to be able to have the full benefit of the *Cohen v. Goldberger* case. Unlike the attorney in *Cohen* who filed a motion requesting an attorney's lien, defendant only filed an affidavit in support of attorney's lien with the Court of Appeals. However, Ohio law has never directly addressed perfection requirements for attorney's liens. In *Boston & Colorado Smelting Co. v. Pless,* 9 Colo. 112, 10 P. 652 (1886), the Colorado Supreme Court stated that common law perfection of an attorney's lien is made when the judgment debtor receives notice of the claimed attorney's lien. Until such notice is received, the judgment debtor is entitled to assume that all attorneys fees have been satisfied.

**6.** Section 547(e) provides, in pertinent part, as follows:

"(e)(1) For the purposes of this section—
\* \* \* \* \* \*
(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

 In the present case, the evidence indicated that the attorneys for The Brooks & Stafford Co., the principal judgment debtor, and the Receiver Special Master were aware of defendant's claimed attorney's lien. Since actual notice was received by those responsible for distributing the judgment funds, defendant's attorney's lien was properly perfected under state law and for bankruptcy purposes. Therefore, defendant's receipt of the judgment payment did not prejudice other creditors, and is not subject to attack under Section 547.

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; and

(ii) 10 days after such transfer takes effect between the transferor and the transferee."