**In re SULLIVAN HAAS COYLE, INC., Debtor.**

**Richard D. ELLENBERG, as Trustee of Sullivan Haas Coyle, Inc., Plaintiff,**

**v.**

**WILLIAM GOLDBERG & COMPANY, INC., and William Goldberg, Defendants.**

**BAP No. A95–70133–JB.
Adversary No. 96–6184.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 7, 1997.

---

1. The district court dispensed with oral argument pursuant to section (3) of paragraph two of rule 8012.

Richard D. Ellenberg, Tamara Miles Ogier, Ellenberg & Associates, P.C., Atlanta, GA, for plaintiff.

Andrew R. Kirschner, Beford, Kirschner & Venker, P.C., Atlanta, GA, for defendants.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This preference action is before the Court on cross-motions for summary judgment. Plaintiff Richard D. Ellenberg, as trustee for the estate of Sullivan Haas Coyle, Inc. ("SHC"), asserts that eight payments totaling $34,716.38 made to a consulting firm, Defendant William Goldberg and Company, Inc. ("Goldberg & Co.") and two payments totaling $13,000.00 made to the president of the consulting firm, Defendant William

Goldberg, were preferences under 11 U.S.C. § 547(b). The transfers at issue took place more than ninety days and less than one year before SHC filed its petition for bankruptcy relief. Therefore, the trustee's preference claim is predicated on the expanded reachback of 11 U.S.C. § 547(b)(4)(B), which allows the trustee to recover preferential transfers made within a year before bankruptcy, if the transfer was to or for the benefit of an insider of the debtor. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

The trustee filed a motion for summary judgment, arguing that all the elements of a preference are established by undisputed facts. He argues that the defendants' relationship with the debtor was such that they were "insiders" of the debtor, subjecting the defendants to a one-year preference period rather than the usual ninety days. The defendants filed a motion for summary judgment, arguing that they were not "insiders," that there was no "antecedent debt" as required for a preference action, that each payment was a contemporaneous exchange for new value given to the debtor under 11 U.S.C. § 547(c)(1), and that the payments to Defendant Goldberg & Co. were made in the ordinary course of business under 11 U.S.C. § 547(c)(2). The Court held a hearing on these motions on February 5, 1997. Following the hearing, counsel filed additional briefs. After considering all the facts and the arguments raised by counsel, the Court concludes that these defendants were not insiders of the debtor, such that the trustee's preference action must fail.[1]

The material facts are undisputed. The debtor SHC was an advertising agency based in Atlanta, Georgia, and its corporate principals were Jerry Sullivan, Kenneth Haas, and Robert Coyle. In 1992, SHC was experiencing financial difficulties. Defendant Goldberg & Co. is in the consulting business and solicited SHC by mail, based upon a Dun & Bradstreet list of companies slow in paying their bills.

On October 5, 1992, the principals of SHC signed a letter agreement with Defendant

---

1. Since the Court concludes that the defendants were not insiders, the Court need not determine whether the defenses in §§ 547(c)(1) and (c)(2) apply.

Goldberg & Co. setting out the terms of Goldberg & Co.'s engagement as consultants to SHC and Messrs. Sullivan, Haas & Coyle. The letter did not describe any specific services, but contained the hourly rate to be charged and other details of Goldberg & Co.'s billing arrangement. The agreement was terminable at will by either party upon written notice. At the time Goldberg & Co. was retained by SHC, SHC was threatened with lawsuits and supply cutoffs, and its receivables were less than its payables. Mr. Goldberg is the president of Goldberg & Co. Defendant Goldberg & Co. is and was, at all relevant times, a corporation in good standing. The trustee has not sought to pierce the corporate veil, but the trustee contends that since the individual at Goldberg & Co. performing services for SHC was Mr. Goldberg, he also had insider status.

Through affidavits and deposition testimony, counsel have presented many undisputed facts pertinent to the issue of whether Goldberg & Co. and Mr. Goldberg were insiders of the debtor. Defendant Goldberg & Co. acted as a financial consultant to the debtor for approximately two years, the defendants working with the debtor on a daily basis. Goldberg & Co. gave SHC advice on all financial matters, but Messrs. Sullivan, Haas and Coyle always made the final decisions. Goldberg & Co. created weekly "cash plans" showing what the debtor owed, what bills were expected, what receivables were due, and when collections were expected. In order to prepare these cash plans, Mr. Goldberg saw invoices, check stubs, bank statements, and receivables of the debtor. Mr. Goldberg also assisted the debtor in acquiring new accounts receivable financing, and he introduced the debtor to a new accountant. Mr. Goldberg spoke with many of the debtor's creditors concerning their accounts and when they might receive payment.

Mr. Goldberg talked to the debtor's bank daily regarding the status of debtor's account. When there were insufficient funds to cover debtor's checks, the bank would charge the debtor an insufficient funds fee but would pay the checks. Then, sufficient funds to cover the checks would be deposited by the debtor. When there were insufficient finds, the bank would fax to someone at the debtor (usually Mr. Goldberg) a list of checks written by SHC and a statement of funds available, seeking instructions as to which checks to pay. Mr. Goldberg would follow up, relate the information to a principal of the debtor (usually Mr. Coyle), and Mr. Coyle and Mr. Goldberg would discuss which checks should be paid. Mr. Goldberg then reported the decision to the bank. There seems to be some dispute as to whether Mr. Goldberg recommended who should be paid, but this dispute is not material to the case.

The principals of SHC did not always follow Mr. Goldberg's advice. For example, Mr. Goldberg had no ability to stop the principals from taking money from SHC against his advice. In the last half of 1994, Goldberg & Co. advised the principals of SHC that the corporation's cash flow required a reduction in outlays of cash for expenses. Goldberg & Co. advised the principals against increasing their salaries. In spite of this advice, the principals increased their salary from $140,000.00 paid in fiscal year 1993 to $216,000.00 paid during the last six months of 1994.

Defendant Goldberg & Co. and Defendant Goldberg could not sign checks for SHC, hire or fire employees of SHC, or decide to take on new customers for SIC. Defendants could not negotiate with printers on behalf of SHC, could not sign contracts or change the bank accounts of SIC, and had no role in supervising production. Defendants had no authority to alter or approve payables, they could not approve any expense reimbursements for SHC, and they could not attempt to collect monies owed to SHC.

The payments at issue are eight payments made by SHC to Goldberg & Co. between July 29, 1994 and November 11, 1994 totaling $34,716.38 for consulting services rendered. Each payment was made pursuant to an invoice, and the trustee has not contested the value of the services rendered. As to Mr. Goldberg individually, the trustee seeks to set aside two transfers totaling $13,000.00 made in August and September of 1994. This amount represents payments to Mr. Goldberg for money he deposited into SHC's account to induce the bank to honor SHC

checks, before SIC had funds sufficient to cover the checks. Before tendering his own check to the bank for deposit, Mr. Goldberg insisted on receiving a check from SHC in the same amount, which he simultaneously deposited into his own account.

On December 9, 1994, SHC and its principals, Messrs. Sullivan, Haas and Coyle, engaged Goldberg & Co. as a broker to assist in soliciting prospective acquirers or merger partners to sell SHC's stock or assets. Goldberg & Co. negotiated on SHC's behalf with Aydlotte & Cartwright, Inc. Shortly thereafter, SHC ceased operations as SHC on December 31, 1994. Defendants contend that the business was fraudulently conveyed to Aydlotte & Cartwright, but that dispute is not material to the issues in this preference litigation.[2] SHC filed for bankruptcy relief on July 24, 1995.

The elements of a preference claim are set out in § 547(b) of the Bankruptcy Code. The trustee may avoid a transfer of property of the debtor to or for the benefit of a creditor for antecedent debt owed by the debtor before such transfer was made, if the transfer was made while the debtor was insolvent, and if the transfer enabled the creditor to receive more than the creditor would receive in a Chapter 7 liquidation. Finally, the timing of the transfer in relation to the filing of bankruptcy is critical. The transfer must have taken place within ninety (90) days before the bankruptcy was filed, or, if the creditor was an insider at the time of the transfer, the transfer must be made within one year before the bankruptcy was filed.

■ Defendants contend that they were not insiders of debtor SHC, that the transfers at issue took place more than ninety days prior to the filing of the bankruptcy, and that the trustee's preference claims should be dismissed as a matter of law. The trustee agrees with the defendants that the facts with respect to the defendants' alleged insider status are undisputed, but the trustee argues that the defendants are insiders as a matter of law. Whether a party is an insider is a mixed question of law and fact. *See In re Krehl*, 86 F.3d 737, 742 (7th Cir.1996); *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 n. 1 (B.A.P. 9th Cir.1987). While the question requires a fact-intensive analysis, the parties here both argue that the facts are undisputed, and their disagreement is in the application of the law to the facts.

■ The term "insider" is defined in the Bankruptcy Code in § 101(31). Because the debtor here is a corporation, the section provides, in pertinent part, as follows:

(31) "Insider" includes . . .

. . .

(B) if the debtor is a corporation

  (i) director of the debtor;

  (ii) officer of the debtor;

  (iii) person in control of the debtor;

  (iv) partnership in which the debtor is a general partner;

  (v) general partner of the debtor; or

  (vi) relative of a general partner, director, officer, or person in control of the debtor . . .

11 U.S.C. § 101(31) (1994).

While § 101(31) lists specific relationships as insider relationships, the list is not exhaustive. Section 102(3) of the Bankruptcy Code provides that the word "includes" in Title 11 is not limiting, and thus the list is only intended to be illustrative. *See Krehl*, 86 F.3d at 741; *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir.1996); *Koch v. Rogers (In re Broumas)*, 203 B.R. 385, 391 (D.Md. 1996). The trustee argues that Defendants Goldberg & Co. and Mr. Goldberg were "persons in control of the debtor" under § 101(31)(B)(iii), or, in the alternative, that the defendants' relationship with the debtor was sufficiently close that they should be considered insiders under the open-ended definition of § 101(31).

The Bankruptcy Code does not define a "person in control" or "control." Shortly

---

**2.** The transfer to Aydlotte & Cartwright is the subject of another adversary proceeding, *Ellenberg v. Aydlotte & Cartwright, Inc.*, Adversary Proceeding No. 95–6830. The trustee sought court approval to settle that litigation, and Defendants Goldberg and Goldberg & Co. objected to the settlement. Following a hearing on the matter on February 26 and 27, 1997, the Court granted the trustee's application to compromise

after the enactment of the Bankruptcy Code, commentators suggested that the courts might look to the concept of control found in the securities law for guidance. *See* John Tuskey, Note, *The Term Insider within Section 547(b)(4)(B) of the Bankruptcy Code,* 57 NOTRE DAME LAWYER 726, 731 & n. 39 (1982) (*citing* James F. Queenan, Jr., *The Preference Provisions of the Pending Bankruptcy Law,* 83 COM. L.J. 465, 470 (1977)); Walter Ray Phillips, *Insider Provisions of the New Bankruptcy Code,* 55 AM. BANKR. L.J. 363, 367–68 & nn. 35–37 (1981). The courts do not appear to have taken up this suggestion.

The Eleventh Circuit has considered what constitutes "control" in the context of determining whether a shareholder-claimant was an insider in an equitable subordination case under § 510(c) of the Bankruptcy Code.[3] *See Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.),* 799 F.2d 726 (11th Cir. 1986). Finding the claimant to be an insider as a "person in control of the debtor," the court held that a shareholder has control when she determines corporate policy, whether by personally assuming management responsibility or by selecting management personnel. *Id.* at 732. In *N & D Properties,* the claimant was a minority shareholder who took control of the debtor after the bank called its loans, by immediately retaining legal counsel, by retaining a business consultant to review the debtor's operations, and by having professionals make recommendations to her with respect to changes in management personnel, pricing policy, cost control, and capital investment. She also made the decision to file bankruptcy proceedings without consulting the majority shareholder.

Bankruptcy court decisions interpreting the words "person in control" under § 101(31)(B)(iii) in preference litigation suggest that a high degree of control is necessary. In *UVAS Farming Corp. v. Laviana Investments, N.V. (In re UVAS Farming Corp.),* 89 B.R. 889, 892 (Bankr.D.N.M.1988), the court held that in order to find control,

the court must find an opportunity by the defendant to self-deal or exert more control than is available to other unsecured creditors. Mere financial power does not amount to control over the debtor, as this is simply an incident of the debtor-creditor relationship. Holding that minority shareholders of the debtor were not "persons in control," the court found that they had no day-to-day control, and that they had no stranglehold over the debtor, such that the debtor was free to act independently. While the minority shareholders had personal and business relationships with the debtor and with the majority shareholders, and while they sought to keep themselves fully informed of debtor's business operations and financial condition, all of these actions did not amount to the degree of control necessary to be a "person in control."

In *Hunter v. Babcock (In re Babcock Dairy Co. of Ohio, Inc.),* 70 B.R. 662, 666 (Bankr.N.D.Ohio 1986), the court held that the degree of control required to be a "person in control" is such that the person "must have at least a controlling interest in the debtor, or that the person must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." A superior bargaining position in a contractual relationship with the debtor is insufficient to establish control under § 101(31)(B)(iii). *Id.* In *Babcock,* the defendant was a former owner of the debtor who was not able to make dispositive corporate decisions or to command authority over any corporate affair. He could not dispose of corporate assets or prevail in decisions regarding the operation of the debtor's business.

■ Applying these concepts of "control" to the case at bar, the court concludes that the defendants here were not "persons in control" of the debtor within the meaning of § 101(31)(B)(iii). While defendants were involved in day-to-day decisions regarding the management of debtor's cash position, defendants had no stranglehold over the debtor. The debtor was free to act independently and

---

and settle the dispute with Aydlotte & Cartwright, Inc.

**3.** The burden and sufficiency of proof in an equitable subordination case depends on whether the claimant is an insider.

could terminate Defendant Goldberg & Co. at any time. The defendants could not unqualifiably dictate corporate policy, and all final decisions were made by Messrs. Sullivan, Haas and Coyle. There was no evidence that these defendants could command authority over corporate affairs by disposing of corporate assets or prevailing in any decisions regarding the actual operation of the debtor's business. Defendant Goldberg & Co. was simply a consultant hired to give advice on financial matters; he could not determine or dictate corporate policy.

The trustee also argues that Defendants should be considered "insiders" under the flexible definition implied by the statute's use of the term "includes." Defendants suggest that if they do not qualify as "persons in control" under § 101(31)(B)(iii), then they cannot be insiders. This argument is not persuasive. The more open-ended definition implied by the word "includes" is not synonymous with the "person in control" language, although control is certainly a significant factor in the insider analysis. *See Broumas,* 203 B.R. at 391 ("Actual control is not a predicate to finding someone to be an extra-statutory insider"). *But see Butler,* 72 F.3d at 443 (where the court used the *Babcock* test for control to hold that a manager and former owner was not an insider).

The courts have struggled to define who or what is an insider by virtue of the non-exhaustive nature of the statutory definition. The legislative history of § 101(31) indicates that, "An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." H.R.Rep. No. 95–595, at 312, re-printed in 1978 U.S.C.C.A.N. 5963, 6269; S.Rep. No. 95–989, at 25, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810–11. The tests developed by the courts in determining who is an insider focus on the closeness of the parties, the degree to which the transferee is able to exert control or influence over the debtor, and whether the transactions between the debtor and the defendant were conducted at arm's length. *See Schuman,* 81 B.R. at 586; *Browning Interests v. Allison (In re Holloway),* 955 F.2d 1008, 1011 (5th Cir.1992).

■ The courts have considered whether the degree of closeness and control is sufficient to confer insider status in a variety of business and domestic relationships that are not defined in the statute. For example, there are reported decisions in preference cases involving attorneys,[4] real estate brokers,[5] former owners,[6] former presidents,[7] ex-wives,[8] ex-brothers-in-law,[9] general managers,[10] and creditors.[11] While there do not appear to be reported decisions in preference cases involving financial consultants as insiders, the cases dealing with attorneys are helpful. *See Broumas,* 203 B.R. 385; *Oliver v. Kolody (In re Oliver),* 142 B.R. 486 (Bankr.M.D.Fla.1992); *Kepler v. Schmalbach (In re Lemanski),* 56 B.R. 981 (Bankr. W.D.Wis.1986); *Bahas v. Sagen (In re Durkay),* 9 B.R. 58 (Bankr.N.D.Ohio 1981). The term "insider" does not automatically include an attorney of the debtor. *See Lemanski,* 56 B.R. at 983; *Durkay,* 9 B.R. at 60. The attorney in *Broumas* qualified as an extra-statutory insider, while the attorneys in *Oliver, Durkay and Lemanski* did not. *Broumas,* 203 B.R. at 391; *Oliver,* 142 B.R. at 490; *Durkay,* 9 B.R. at 61; *Lemanski,* 56

---

4. *Broumas,* 203 B.R. 385; *Oliver v. Kolody (In re Oliver),* 142 B.R. 486 (Bankr.M.D.Fla.1992); *Kepler v. Schmalbach (In re Lemanski),* 56 B.R. 981 (Bankr.W.D.Wis.1986); *Bahas v. Sagen (In re Durkay),* 9 B.R. 58 (Bankr.N.D.Ohio 1981).

5. *Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman),* 126 B.R. 63 (B.A.P. 9th Cir.1991).

6. *Babcock,* 70 B.R. 662.

7. *Butler,* 72 F.3d 437.

8. *Schuman,* 81 B.R. 583.

9. *Rush v. Riddle (In re Standard Stores, Inc.),* 124 B.R. 318 (Bankr.C.D.Cal.1991).

10. *Id.*

11. *Markowitz v. Heritage Bank, NA. (In re Jefferson Mortgage Co.),* 25 B.R. 963 (Bankr.D.N.J. 1982); *Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Millard Partners),* 145 B.R. 682 (D.Col.1992), aff'd sub nom. *Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Hoffman Partners),* 12 F.3d 1549 (10th Cir.1993), cert den. 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994).

B.R. at 983. The factual distinctions in the cases are illustrative. The lawyer in *Broumas* had an extremely close relationship with the debtor for in excess of 15 years. 203 B.R. at 388–89. The debtor had been the chairman of the board of a now-defunct bank, and the lawyer and his law firm had bank accounts at this bank, with the debtor having unlimited access to the lawyer's accounts (including signatory authority). The debtor and the lawyer had invested together, made loans to each other, and pledged each other's credit over the years. The lawyer and the debtor's loans and investments were made without any written agreements, and they made numerous purchases of stock in furtherance of a questionable scheme that was the subject of an SEC enforcement action. In fact, the attorney in *Broumas* was really much more than an attorney to the debtor. The court described their association as a "long term complex relationship," since they had been, in addition to attorney and client, principal and agent, joint venturers, landlord and tenant, and creditor and debtor. *Id.* By contrast, the lawyer in *Lemanski*, while representing the debtor on several occasions over a ten-year period, did not exercise the high degree of influence or control necessary for insider status. 56 B.R. at 983. The court found there was nothing more than a history of arm's length dealing between the lawyer and the debtors. *Id.* Similarly, the lawyers in *Oliver* and *Durkay* did not have the closeness with the debtors found in *Broumas*.

The closeness of the parties' relationship was critical in *Rush v. Riddle (In re Standard Stores, Inc.)*, 124 B.R. 318 (Bankr. C.D.Cal.1991). The debtor and the defendant had an extremely close relationship, as the defendant considered the president of the debtor to be family, even though they were now ex-brothers-in-law. The defendant had made the debtor an unsecured loan, relying only on the ex-brother-in-law's word, and the defendant was arranging the purchase of a significant portion of the debtor's operation, using the debtor's employees and attorney. The defendant even borrowed the debtor's "d/b/a" in naming his new company that was going to buy the debtor's assets. The court found the defendant to have "insider" status based on closeness between the parties and

the conclusion that the transactions were not conducted at arm's length.

In a case involving a real estate broker, the Ninth Circuit Bankruptcy Appellate Panel stated:

> [I]nsider status may be based on a professional or business relationship with the debtor, in addition to the Code's *per se* classifications, where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties.

*Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 70 (9th Cir. BAP 1991). The court in *Friedman* noted that not every debtor-creditor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship. The court held, "[I]t is unlikely that Congress intended that complex business relationships existing over a period of time, attended by some personal involvement but without control over the debtor's business, would subject such creditor to insider status." *Id.* at 70.

In preference actions against creditors, trustees frequently assert that creditors should be considered insiders because they have control over the debtor. The degree of control must be "powerful," and the courts look at the totality of the circumstances to determine when a creditor has assumed control of the debtor. *See Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Millard Partners)*, 145 B.R. 682, 688 (D.Col.1992), *aff'd sub nom. Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549 (10th Cir.1993), *cert. den.* 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994). "In order to control a debtor, a creditor must be so powerful that the debtor becomes a mere instrument or agent of the creditor, unable to make independent policy and personnel decisions." *Id.* A debtor's inferior bargaining position does not transform a creditor into a control person. *See Balaber–Strauss v. GTE Supply Corp. (In re Coin Phones, Inc.)*, 153 B.R. 135, 141 (Bankr.

S.D.N.Y.1993). Most creditors have arm's-length debtor-creditor relationships, largely because the debtor can terminate the relationship at any time and look for another creditor. *See Markowitz v. Heritage Bank, N.A. (In re Jefferson Mortgage Co.),* 25 B.R. 963, 970 (Bankr.D.N.J.1982); *Tidwell v. AmSouth Bank, N.A. (In re Cavalier Homes of Ga., Inc.),* 102 B.R. 878, 883–84 (Bankr. M.D.Ga.1989). *See, generally, Gray v. Giant Wholesale Corp.,* 758 F.2d 1000 (4th Cir. 1985); *Carlson v. Farmers Home Administration (In re Newcomb),* 744 F.2d 621, 624 n. 4 (8th Cir.1984).

■ Applying the law to the facts, the Court concludes that Defendants Goldberg & Co. and Mr. Goldberg were not insiders within the meaning of § 101(31). They did not have the necessary degree of closeness or control over the debtor, and the transactions between the defendants and the debtor were conducted at arm's length. While Defendant Goldberg & Co. had day-to-day involvement for two years in the debtor's cash management, the defendants' relationship to the debtor did not have the intensity and involvement of the "long term complex relationship" in *Broumas,* and it was more like the professional relationship in *Friedman.* In addition, the defendants could not sign checks for the debtor, could not hire or fire employees and had no role in production or the operation of the business. Significantly, the consulting agreement between the debtor and Defendant Goldberg & Co. was terminable at will by either party. *See Cavalier Homes,* 102 B.R. at 883–84.

While defendant Goldberg & Co. was retained to give the debtor financial advice and, in the course of their relationship, the defendants obtained considerable knowledge about the financial condition of the debtor, this advice and knowledge alone does not make one an insider. Professionals are often hired by businesses in financial straits, and those professionals typically give advice and obtain knowledge about the debtor's financial condition. That knowledge, without the type of closeness or control found in the cases discussed above, should not make a consultant or professional an insider, subject to the

expanded one-year reachback in the preference statute.

The trustee argues that the most factually analogous case is *In re Sky Valley, Inc.,* 135 B.R. 925 (Bankr.N.D.Ga.). Even though the business relationship in *Sky Valley* was labeled as that of an advisor/consultant, the case is not on point or persuasive with respect to the issues before this Court. *Sky Valley* involved an application for compensation by a corporation called Bridge Properties for 3% of the gross proceeds from the auction of debtor's properties. Bridge Properties had sought and obtained court approval of its employment as a real estate broker, without disclosing the fact that debtor's advisor/consultant, Mr. Anglin, had an ownership interest in Bridge Properties. Neither the debtor, nor Mr. Anglin, nor Bridge Properties disclosed that this compensation by way of a commission was part of a side agreement between Mr. Anglin and the debtor's principal that the commissions would serve as Mr. Anglin's compensation for advisory and consulting services for which he had not been paid. Significantly, the court found these non-disclosures to be intentional and material. Mr. Anglin had also failed to disclose his status as a secured creditor.

The court in *Sky Valley* denied the application for compensation, finding that Bridge Properties was not a disinterested person under 11 U.S.C. § 101(14) as required by 11 U.S.C. § 327(a). Bridge Properties was not disinterested because Mr. Anglin was both a secured creditor and an "insider." *Id.* at 935–36. He advised the debtor both before and after bankruptcy, and he recommended, met with, and instructed the bankruptcy attorneys. He played an active role in the management of the Chapter 11 proceeding, and the court found that he was without question "in control." *Id.* at 935. As an insider, Mr. Anglin had a conflict of interest and could not be employed as a real estate broker. The court's disqualification of Bridge Properties was both a function of its connection to the debtor and the intentional non-disclosures. The court also noted that debtor had never sought or obtained approval of Mr. Anglin's employment as an advisor and consultant to the debtor, and that his

role as an advisor post-bankruptcy had not been disclosed. Finally, the commission from the sale of debtor's properties was not intended to compensate Mr. Anglin for any services as a real estate agent, as neither Mr. Anglin nor Bridge Properties performed any services as a real estate broker.

The case before the Court is factually distinguishable from *Sky Valley* in many respects. There is no allegation that Defendants Goldberg & Co. or Mr. Goldberg ever failed to disclose anything to the Court. Neither Defendant Goldberg & Co. nor Mr. Goldberg served the debtor in any capacity post-bankruptcy or had any role in the decision to file bankruptcy. The case at bar does not involve any questions relating to disinterestedness or conflicts of interest, and there is no allegation by the trustee that Defendant Goldberg & Co. or Mr. Goldberg were paid any monies which were not fully owed and payable.

■ Defendants also argue that the insider analysis in *Sky Valley* is irrelevant, because the court in *Sky Valley* addressed the insider issue in a different context from the context in which the issue arises here. In *Sky Valley*, the court found the consultant to be an insider in order to find that he was not disinterested and thus not qualified to serve as an independent professional appointed by the court. In the case at bar, the court is addressing whether the defendants were insiders so as to expand the preference period from 90 days to one year. Recognizing that the term "insider" is used in many places in

the Bankruptcy Code,[12] some courts have concluded that the term may not mean the same thing in every Code section. These courts suggest that it is appropriate to consider the purpose of the particular statute in which the term "insider" is used. *See Standard Stores*, 124 B.R. at 324. In *Oliver*, the court stated:

> [I]t is obvious ... that it is important to determine the purpose for which the term "insider" is used, and one must consider the underlying policy reasons for precluding an insider from participating in the administration of the estate as distinguished from permitting a preference action to be maintained against an insider by utilizing the one-year reachback provision of § 547 which involves totally different policy considerations.

142 B.R. at 489. There may be some support for this position in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (term "allowed secured claim" interpreted differently in §§ 506(a) and (d) based on ambiguity and pre-Code caselaw), although the dissent by Justice Scalia emphasizes that the normal rule in statutory construction is that "identical words used in different parts of the same act are intended to have the same meaning." 502 U.S. at 422, 112 S.Ct. at 780–81 (Scalia, J., dissenting) (citations omitted). That presumption is strengthened when the term is a defined term within the federal statute, as is the case here. *See Sorenson v. Secretary of Trea-*

---

12. Code sections that include the term "insider" are as follows:
1) § 303(b)(2) (excluding insiders for purposes of filing involuntary petition);
2) §§ 327(a) and 101(14) (conditions for trustee's employment of a professional person);
3) § 502(b)(4) (disallowing claims for the services of an insider or an attorney of the debtor where the claims exceed the reasonable value of the services);
4) § 522(d)(10)(E)(i) (debtor's exemptions);
5) § 547(b)(4)(B) (the section at issue in this case);
6) § 547(c)(5)(A)(ii) (extending the insider concept to the voidable preference test for floating lien);
7) § 550(c)(2) (limit on liability of transferee);
8) § 702(a)(3) (forbidding a creditor from voting for a trustee candidate if the creditor is an insider);

9) § 727(a)(7) (authorizing a court to deny a debtor's discharge if he commits an act provided for in § 727(a)(2)-(6) during the year before the debtor's case in connection with another bankruptcy case concerning an insider);
10) § 747(1) (subordinating insider net equity claims to all other customer claims);
11) § 1104(c)(2) (conditions for appointing examiner);
12) § 1129(a)(5)(B) (a court shall not confirm a reorganization plan if the proponent of the plan has not disclosed the identity of an insider that will be employed or retained by the reorganized debtor and the nature of any compensation for those insiders);
13) § 1129(a)(10) (prerequisites for confirmation).

*sury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986). However, the Court need not decide whether the term "insider" has the same meaning in every section where it appears in the Bankruptcy Code, since the facts of the case at bar are both distinguishable from the facts in *Sky Valley* and insufficient to make the defendants insiders, even using the applications of the insider test employed in cases outside the preference context.

In conclusion, the parties do not dispute any material fact, and defendants' relationship to the debtor was not characterized by the degree of control, closeness, or lack of arm's-length dealing necessary to find insider status. Since the defendants were not insiders, the one-year reachback provision in § 547(b)(4)(B) does not apply, and the trustee's preference claim cannot succeed. Accordingly, plaintiff's motion for summary judgment is DENIED, and defendants' motion for summary judgment is GRANTED.

A separate judgment consistent with this opinion will be issued.

IT IS SO ORDERED.